**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>TRAVIS J. WEBER,<br><br>Debtor,<br><br>_____<br><br>IPMEDIA HOLDINGS, INC., RUSSELL CHATSKIS, AND EUGENE CHERNENKO,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVIS J. WEBER,<br><br>Defendant. | Case No.  16-39270<br>Chapter  7<br><br>The Honorable A. Benjamin Goldgar<br><br><br><br>Adversary No. 17-_____ |

**COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBTS**

Plaintiffs IPMedia Holdings, Inc. ("IPMedia"), Russell Chatskis ("Chatskis") and Eugene Chernenko ("Chernenko") (collectively, "Plaintiffs") file their Complaint against Defendant Travis J. Weber ("Weber" or "Defendant") pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) and Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedures and respectfully states as follows:

**STATEMENT OF THE CASE**

Weber, Chatskis and Chernenko were shareholders, officers and employees of IPMedia, a business that sells computer memory devices and other consumer and business technology

products. In 2006 Weber resigned from IPMedia and sought a forced buy-out of his IPMedia shares. To resolve the dispute between themselves, the parties agreed to binding arbitration before the Honorable Stuart Nudelman, a retired Cook County judge. Prior to the arbitration, Plaintiffs learned that Weber had breached his fiduciary duties to the Plaintiffs and those claims became part of the arbitration too.

What started as a standard arbitration became, in Judge Nudelman's words, "bad TV" as Weber's fiduciary breaches (past and during the arbitration itself) were exposed. Eventually Weber, among other things, admitted to stealing huge sums of money from Plaintiffs by setting up fake vendors, using aliases to set up fake bank accounts, revising company ownership documents and deleting accounting records. He did all these things and more in a scheme to fraudulently convert money and to hide his fiduciary breaches. Weber also admitted to lying repeatedly in testimony at the arbitration, in his depositions and in repeated written submissions—many times lying again in the "corrections," only to have the new lies exposed. Weber also admitted to bribing a witness with several thousand dollars and then offering that same witness $100,000 to lie at his deposition.

After hearing all testimony, Judge Nudelman issued detailed orders describing Weber's actions and ruling that (1) Weber was to be paid nothing (beyond what he had already fraudulently converted) for his IPMedia stock based on his fraud and fiduciary breaches as an IPMedia officer and shareholder; (2) Weber was ordered to pay IPMedia $600,000.00, for monies he was paid during the arbitration while he was in breach of his fiduciary duties and committing fraud against IPMedia; (3) $279,948.15 to IPMedia for sanctions issued under Rule 137 based on his fraudulent conduct in the arbitration; and (4) $113,391.56 to Chatskis and Chernenko for sanctions issued under Rule 137 for the same reason.

The arbitration award was subsequently confirmed by the Circuit Court of Cook County, Illinois. To date, Weber has paid nothing. Accordingly, Plaintiffs seeks a determination by this Court that Weber's obligations to Plaintiffs under the pursuant to the arbitrators orders are not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).

## JURISDICTION, VENUE AND PARTIES

1. Weber commenced his above-captioned chapter 7 bankruptcy case on December 13, 2016, by filing a Petition for Relief in the United States Bankruptcy Court for the Northern District of Illinois.

2. IPMedia is an Illinois corporation with its principle place of business in Wheeling, Illinois.

3. Chatskis is an individual citizen of Illinois residing in Chicago, Illinois.

4. Chernenko is an individual citizen of Illinois residing in Chicago, Illinois.

5. Upon information and belief, Weber is an individual citizen of Illinois residing in Evanston, Illinois.

6. This adversary proceeding arises out of, and is related, to the above-captioned chapter 7 bankruptcy case pending before this Court.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 because this is a civil case arising under 11 U.S.C. § 523(a).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1409 because this proceeding arises under 11 U.S.C. § 523(a) and because the Defendant's bankruptcy case is pending in this District.

9. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because this proceeding seeks a determination as to the dischargeability of Defendant's debts to

Plaintiffs.

## FACTS COMMON TO ALL COUNTS

10. Weber was an IPMedia shareholder, officer and employee from its until his removal from the company. Chatskis and Chernenko were, and remain, IPMedia's only other shareholders.

11. At IPMedia, Weber was in charge of the company's finances and product procurement. While handling IPMedia's finances, Weber engaged in significant and continuous fraudulent activities in breach of his fiduciary duties.

12. Beyond converting huge sums of money through fraudulent mechanisms, Weber also used his control over the company's finances and QuickBooks accounting software, attempted to cover up his defalcation.

13. Weber's actions caused damage to Plaintiffs and represented myriad fraudulent activities and gross breaches of his fiduciary duties.

14. Pursuant to an agreement between the Plaintiffs and Weber, their disputes were submitted to binding arbitration. The arbitration started in May of 2008 and was to conclude by October of 2008. Because of Weber's repeated false testimony and the ultimate discovery of a fraud far deeper than Plaintiffs' could have speculated at the outset, the arbitration itself ran through early March 2009.

15. Following completion of testimony, Judge Nudelman issued two orders: (1) a May 8, 2009 Final Order (the "Final Order") (a copy of the Final Order is attached as **Exhibit A**); and a January 19, 2010 Amended Arbitration Award and Final Order (the "Amended Award") (a copy of the Amended Award is attached as **Exhibit B**).

16. The Arbitration did not proceed smoothly. As Judge Nudelman stated, "The case

4

proceeded similar to that of the peeling an onion, each day or week or month brought a new layer of deceptions and conflict between Mr. Weber and his former partners. With perhaps a very rare exception, almost all of these problems were of Mr. Weber's doing." (Ex. B, p. 2).

17. As noted by Judge Nudelman, "[a]s happened on several occasions, only during the hearing was more evidence brought to light of Mr. Weber's attempts to harm or prejudice IPMedia. False and inaccurate motions and pleadings were filed by Mr. Weber, based upon information he often either knew was false of had reason to believe was inaccurate." Judge Nudelman further stated that "[t]here were multiple instances of impeached testimony during the course of Mr. Weber's testimony under oath before the panel. His testimony had to be stopped on many occasions, and recantations were often offered." *Id.*

18. Judge Nudelman ruled in favor of Plaintiffs on all claims finding, "Mr. Weber by his actions over the course of many years, have [sic] caused harm to IPMedia and was in breach of his fiduciary duties both as an officer and as a stock holder in a closely held corporation" and required Weber to pay $600,000.00 to IPMedia. *Id.* at p. 3.

19. Based on Weber's fiduciary breaches and conduct during the arbitration itself Judge Nudelman also awarded IPMedia $279,948.15 in sanctions and Chatskis and Chernenko $113,391.56 in sanctions. Ex. A at pp. 2-3.

20. Assessing sanctions against Weber, Judge Nudelman noted the following:

The behavior of Mr. Weber time and again was so egregious and continuous that a hearing could not possibly elucidate the panel any more as to whether his pleadings, motions or other paper were not well grounded in fact.
…

During the course of the hearing, breaks of days at a time had to be taken to try to correct the pleadings and motions filed by Mr. Weber because of testimony by him and others that directly contradicted the submitted responses previously filed by him. Admissions of inaccuracies would be forthcoming by Mr. Weber, only to be contradicted during the course of his testimony. When the panel believed that

5

we had turned the corner and nothing else would be discovered or revealed to show dishonest or duplicitous actions on the part of Mr. Weber, more information would be brought to the panel's attention that Mr. Weber had not been either forthcoming or honest in his filings or his testimony.

Many of Mr. Weber's pleadings and filings were done to harass the petitioners and cause them to increase the cost of this hearing. His presentations at the hearing often attempted to continue to cover up his falsehoods, and were either admitted to or denied with responses of not knowing or not remembering. The record is clear and replete with gross violations of the process by Mr. Weber. With each new allegation or claim by Mr. Weber, new information would surface to contradict his claims and show that they were either factually inaccurate, or completely fictitious.

21. The Amended Award was confirmed in all aspects by the Circuit Court of Cook County Illinois in Case No. 09-CH-12857 (the "<u>Confirmation Order</u>") (a copy of the Confirmation Order is attached as **Exhibit C**).

22. Weber has not paid a cent of the judgment against him. After new evidence of Weber's assets and business activities was discovered in 2016, new citations to discover assets were issued by IPMedia. Not long after Weber received the citations he filed this bankruptcy. Upon information and belief, and consistent with the behavior Weber exhibited before and during the arbitration, Plaintiffs believe that Weber has significant assets that he is hiding in the U.S. and off-shore.

23. Exclusive of interest accruing since the date the arbitration award was approved by the Circuit Court of Cook County, Illinois, Weber owes IPMedia $879,948.15.

24. Exclusive of interest accruing since the date the arbitration award was approved by the Circuit Court of Cook County, Illinois, Weber owes Chatskis and Chernenko $113,391.56.

**COUNT I—NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A)
(IPMedia against Weber)**

25. Plaintiff IPMedia realleges the allegations set forth in paragraphs 1 through 24 of

6

this Complaint as if fully set forth in this Count I.

26. Weber is indebted to IPMedia pursuant to the Amended Award and Confirmation Order based on his intentional and fraudulent schemes to defraud and obtain money, funds, and other property owned by and under the custody and control of IPMedia, without its knowledge, authorization, or consent, and by means of material false and fraudulent pretenses, representations, and promises.

27. Beyond his initial fraud, Weber also altered IPMedia's accounting records in an attempt to cover up his fiduciary breaches.

28. Based on the foregoing, IPMedia alleges that Weber's obligations to it under the Amended Award, and Confirmation Order are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### COUNT II—NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(4)
### (IPMedia against Weber)

29. IPMedia realleges the allegations set forth in paragraphs 1 through 24 of this Complaint as if fully set forth in this Count II.

30. Weber is indebted to IPMedia pursuant to the Amended Award and Confirmation Order as a result of Weber's fraudulent and wrongful taking of funds from IPMedia through Weber's intentional scheme and artifice to defraud and obtain money, funds, and other property owned by and under the custody and control of IPMedia without IPMedia's knowledge, authorization, or consent, including through fraud and/or defalcation while Weber was acting in a fiduciary capacity.

31. The arbitrator found that "Mr. Weber by his actions over the course of many years, have [sic] caused harm to IPMedia and was a breach of his fiduciary duties both as an officer and as a stock holder in a closely held corporation." Ex. B at p. 3.

7

32. Weber breached his fiduciary duties by, among other things, converting huge sums of money from the company, fraudulently altering IPMedia's accounting records, destroying business records and taking unauthorized funds from IPMedia's foreign subsidiaries.

33. Based on the foregoing, Plaintiff IPMedia alleges that Weber's obligations to IPMedia under the Amended Award and Confirmation Order are not dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### COUNT III—NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)
### (IPMedia, Chatskis and Chernenko against Weber)

34. Plaintiffs IPMedia, Chatskis and Chernenko reallege the allegations set forth in paragraphs 1 through 24 of this Complaint as if fully set forth in this Count III.

35. Weber is indebted to IPMedia pursuant to the Amended Award and Confirmation Order because of his willful and fraudulent conversion of IPMedia's property without its knowledge, authorization, or consent through Weber's schemes to defraud and obtain money, funds, and other property owned by and under the custody and control of IPMedia and converting to Weber's own uses such money, funds, and other property that belonged to IPMedia, all of which was done intentionally and without justification and was certain to cause financial harm to IPMedia.

36. IPMedia, Chatskis and Chernenko further allege that Weber is indebted to them pursuant to the Amended Award and Confirmation Order as a result of Weber's willful and malicious behavior by, and fraudulent conduct in breach of his fiduciary duties during the arbitration found by Judge Nudelman in his sanction orders.

37. As a result of the Defendants' willful, malicious, and outrageous actions, Plaintiffs IPMedia, Chatskis and Chernenko allege that the Weber's obligations to Plaintiffs IPMedia, Chatskis and Chernenko under the Amended Award and Confirmation Order are not

8

dischargeable pursuant to 11 U.S.C. § 523(a)(6).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs IPMedia Holdings, Inc., Russell Chatskis and Eugene Chernenko respectfully request that this Court enter judgment in their favor and against defendant Travis J. Weber as follows:

(a) Determining, pursuant to 11 U.S.C. § 523(a)(2)(A), that Weber's obligations to IPMedia under the Amended Award and Confirmation Order in the amount of $600,000.00, plus interest and costs, are non-dischargeable in Weber's Chapter 7 bankruptcy case; or, alternatively,

(b) Determining, pursuant to 11 U.S.C. § 523(a)(4), that Weber's obligations to IPMedia under the Amended Award and Confirmation Order in the amount of $600,000.00, are non-dischargeable in Weber's Chapter 7 bankruptcy case; and

(c) Determining, pursuant to 11 U.S.C. § 523(a)(6), that Weber's obligations to IPMedia under the Amended Award and Confirmation Order in the amount of $879.948.15 ($600,000.00 for the breach of fiduciary and $279,948.15 for Illinois Supreme Court Rule 137 sanctions), plus interest and costs, are non-dischargeable in Weber's Chapter 7 bankruptcy case; and

(d) Determining, pursuant to 11 U.S.C. § 523(a)(6), that Weber's obligations to Chatskis and Chernenko under the under the Amended Award and Confirmation Order in the amount of $113,391.56 for the Illinois Supreme Court Rule 137 sanctions, plus interest and costs, are non-dischargeable in Weber's Chapter 7 bankruptcy case.

LATHROP & GAGE LLP

By: */s/ Jordan A. Stein*
Trent P. Cornell
Jordan A. Stein
155 N. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone: 312.920.3300
Facsimile: 312.920.3301
tcornell@lathropgage.com
jstein@lathropgage.com

ATTORNEYS FOR PLAINTIFFS